IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Abner F. Carvajal, | ) |
|              Plaintiff, | ) C.A. No. 6:10-3123-HMH-KFM |
| vs. | ) |
| | ) **OPINION & ORDER** |
| Hayes & Lunsford Electrical Contractors, Inc., Debbie Hammett, individually and as an employee of Hayes & Lunsford, and Mark Hammett, individually and as an employee of Hayes & Lunsford, | ) |
|              Defendants. | ) |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Abner Carvajal ("Carvajal") alleges a hostile work environment because of his race and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). The Defendants moved for summary judgment. In his Report and Recommendation, Magistrate Judge McDonald recommends granting the Defendants' motion. Carvajal filed specific objections to the Report and Recommendation.

---

[1]The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit it with instructions. 28 U.S.C. § 636(b)(1).

1

The Defendants filed a reply on February 9, 2012. For the reasons stated below, the court grants the Defendants' motion for summary judgment.

## I. Factual Background

Carvajal was employed by Hayes & Lunsford Electrical Contractors, Inc. ("Hayes & Lunsford") as an electrician's helper from February 19, 2007 until August 14, 2009. (Defs. Mem. Supp. Summ. J. Ex. 1 (Loftis Aff. ¶ 2).) Carvajal's employment ceased when he was laid off allegedly because of lack of work due to the downturn in the economy. (Id. Ex. 1 (Loftis Aff. ¶ 7).) Carvajal is of Hispanic descent. Carvajal initially worked with Mike Alverson ("Alverson") for three to four months on job sites and later he worked with Debbie Hammett. (Id. Ex. 4 (Alverson Aff. ¶¶ 3-4).) Carvajal alleges that Debbie Hammett and her husband and supervisor, Mark Hammett (collectively "the Hammetts"), created a

> hostile and degrading work environment as a result of Mrs. and Mr. Hammetts' pervasive and continuous racial harassment experienced directly and indirectly by Plaintiff and eventually resulting in Plaintiff filing a formal complaint and requesting a transfer from the supervision of the Hammetts but resulted ultimately in Plaintiff's wrongful termination from employment as retaliation by Defendant for his complaint about the Hammetts.

(Pl. Mem. Opp'n Summ. J. 1.) Carvajal alleges that the actions "consisted of continuous demeaning and degrading behavior from the Hammetts and more specifically Ms. Hammett through the consistent use of racially derogatory terms. Although she claims to be unaware that the term might be offensive Ms. Hammett admits to using the term 'Mexican' and 'Damn Mexican.'" (Id. at 9-10.)

Carvajal worked with the Hammetts at the Broome High School job site. On July 14, 2009, Carvajal told Mark Hammett that he was going to the office which Mr. Hammett

interpreted to mean that Carvajal no longer wanted to work on the Broome High School job site. (Pl. Mem. Opp'n Summ. J. Ex. 2 (M. Hammett Dep. at 50).) Mr. Hammett told Carvajal that if he left the job site, he did not know whether Carvajal would "have a place to come back over here." (Id. Ex. 2 (M. Hammett Dep. at 50).) Carvajal testified that he told Mr. Hammett that he could not work with Debbie Hammett. Mr. Hammett offered to place Carvajal with another employee at the site but he refused because he states that he did not trust Mr. Hammett. (Defs. Mem. Supp. Summ. J. Ex. 2 (Carvajal Dep. at 38-39).)

Instead, Carvajal left the job site and went to Hayes & Lunsford's office to speak with the Project Manager, Jim Murray ("Murray"). Carvajal learned that the Project Manager was not in the office. (Defs. Mem. Supp. Summ. J. Ex. 1 (Loftis Aff. ¶ 6).) However, Carvajal spoke with Ann Loftis ("Loftis"), the Office Manager, and made a complaint about Debbie Hammett harassing him. (Id. Ex. 1 (Loftis Aff. ¶ 6).) Carvajal returned to the office the next day, but remained in his car in the parking lot until Loftis invited Carvajal inside. He met with Loftis and Jim Hearn ("Hearn"), the Human Resources Manager, regarding his complaint. (Id. Ex. 1 (Loftis Aff. ¶ 6).) However, Carvajal testified that, "I limited it. At that point I didn't want to create an issue. I felt I was still working there, didn't want to create a racial issue and give all the details as the way Debbie was behaving. I was actually looking after the interest of the company, which I always have." (Pl. Mem. Opp'n Summ. J. Ex. 1 (Carvajal Dep. at 39).) Further, Carvajal spoke with Murray after he lodged his complaint. (Defs. Mem. Supp. Summ. J. Ex. 7 (Murray Aff. ¶ 7).)

Carvajal relayed to Murray that he could no longer work with the Hammetts and did not want to return to the Broome High School site. Murray testified that Carvajal requested a

3

transfer to another work site. (Defs. Reply Ex. 6 (Murray Dep. at 22-23).) Further, Carvajal testified that he wanted to be transferred to another job site. (Pl. Mem. Opp'n Summ. J. Ex. 1 (Carvajal Dep. at 60).) Murray offered Carvajal the opportunity to work on another project at Greenwood High School, which Carvajal accepted. (Defs. Mem. Supp. Summ. J. Ex. 7 (Murray Aff. ¶ 7).) Carvajal lost 19.5 hours of work between the time he lodged his complaint and when his work began at the Greenwood High School site. (Id. Ex. 1 (Carvajal Dep. at 64-65).) On July 28, 2009, Carvajal provided a written statement to Hayes & Lunsford. (Id. Exs. (Carvajal Dep. at 62-64).); (Defs. Reply Ex. 1 (Handwritten Statement).) On August 14, 2009, Carvajal was laid off along with two other Caucasian employees. (Defs. Mem. Supp. Summ. J. Ex. 1 (Loftis Aff. ¶ 7).); (Pl. Mem. Opp'n Summ. J. Ex. 1 (Carvajal Dep. at 65-67).) The Defendants allege that after completion of the Greenwood High School Project, there was no other project available because of the decline in business due to the downturn in the economy. (Defs. Mem. Supp. Summ. J. Ex. 1 (Loftis Aff. ¶ 7).) In fact, the Defendants submit that from 2009 through 2010, it laid off a total of 42 employees. (Id. Ex. 1 (Loftis Aff. ¶ 7).)

## II. THE REPORT AND RECOMMENDATION

Magistrate Judge McDonald recommends granting the Defendants' summary judgment motion on the basis that with respect to the Title VII hostile work environment claim, "the plaintiff cannot show that the alleged conduct was based upon his race and was sufficiently severe and pervasive to alter the terms and conditions of his employment" and with respect to the retaliation claim, "the plaintiff cannot establish that the proffered explanation was pretext for discrimination." (Report & Recommendation 9, 11.)

### III. Carvajal's Objections

Carvajal specifically objects to the magistrate judge's Report and Recommendation, alleging that he has raised genuine issues of material fact to support his hostile work environment and retaliation claims. Specifically, Carvajal alleges that the magistrate judge "construes all facts and inferences not in the favor of Plaintiff, the non-moving party, but rather the Defendants." (Objections 1-2.)

### IV. Legal Discussion

#### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no *genuine* issue of *material* fact."
Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987).

### B. Hostile Work Environment Claim

Carvajal alleges that he was subjected to a hostile work environment in violation of Title VII. "[I]n order to state a hostile work environment claim, a plaintiff must allege that the harrassment [sic] was based on h[is] . . . race . . . and that the harrassment [sic] was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 347 (4th Cir. 2005) (internal quotation marks omitted). In other words, in order to demonstrate that he was subjected to a hostile work environment, Carvajal must present evidence that: "(1) []he experienced unwelcome harassment; (2) the harassment was based on h[is] . . . race . . . ; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003); Spicer v. Com. of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995).

"The 'severe or pervasive' element has both subjective and objective components." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (en banc). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). "Likewise, if the [plaintiff] does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the [plaintiff's] employment, and there is no Title VII

6

violation." Id. at 21-22. The court considers "[(1)] the frequency of the discriminatory conduct; [(2)] its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and [(4)] whether it unreasonably interferes with an employee's work performance." Ocheltree, 335 F.3d at 333. "This standard is designed to filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Id. (internal quotation marks omitted). "A workplace is sufficiently severe or pervasive when it 'is permeated with discriminatory intimidation, ridicule, and insult.'" Gauny v. Potter, C.A. No. 4:06-504-TLW-TER, 2008 WL 4413193, at *9 (D.S.C. Sept. 23, 2008) (unpublished) (quoting Harris, 510 U.S. at 20). "Title VII does not attempt to purge the workplace of vulgarity." Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996) (internal quotation marks omitted). "[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test. . . . The task on summary judgment is to identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion.'" E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008).

Carvajal fails to provide evidence from which the inference can be drawn that the Hammetts' derogatory references to "Mexicans" was severe or pervasive. The magistrate judge summarized Carvajal's factual allegations in support of his hostile work environment claim as follows:

> Here, the plaintiff complains of the following conduct: Mrs. Hammett yelled at him and cursed at him to stay on the ladder or about his measurements; she stated, "I'm not working with the mother fucker, he don't know what he's doing"; she made him climb the scaffold, but she did not; she would go to the store, running errands, she would go to the trailer to cool herself off in the air

7

condition and take all the time she wanted while [the plaintiff and others] were still out there working in the field"; and the Hammetts "went around spreading gossip about everything and everyone. Creating mayhem about everything and everyone."

(Report & Recommendation 9.) Carvajal submits that the magistrate judge has ignored Debbie Hammett's admitted use of the words "Fucking Mexican, Damn Mexican, and Mexican"[2] in reference to "a broad swath of workers of hispanic de[s]cent on job sites." (Objections 2-3.) In contrast to Carvajal's objections, the magistrate judge considered this evidence. The magistrate judge found as follows:

> Considering the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance, it is clear that the alleged conduct does not meet the third element of a prima facie case. The plaintiff has not presented evidence of the frequency of such conduct. Furthermore, the phrase, while certainly offensive, is not physically threatening. Lastly, it appears from the evidence that plaintiff's main complaints about the Hammetts, and Mrs. Hammett in particular, were about Mrs. Hammett's demanding personality and how she yelled, cursed, gossiped, and created "mayhem" for "everyone." From the record before the court, it does not appear that this conduct was based upon race (or national origin).

(Report & Recommendation 10.) At best, Carvajal has established that comments made by the Hammetts subjectively offended him. Carvajal does not allege any physically threatening statements or that he felt physically threatened. It is unclear how frequently the Hammetts referred to Carvajal or others in a racially derogatory manner. Carvajal testified at his deposition that he had heard Ms. Hammett use the words "fucking Mexicans," and that racist jokes were made but that he did not recall the specific jokes. (Pl. Mem. Opp'n Summ. J.

---

[2] In Ms. Hammett's deposition, she testified that she had used the words "damn Mexicans" but denied ever using the words "fucking Mexicans." (Pl. Mem. Opp'n Summ. J. Ex. 3 (D. Hammett Dep. at 19).)

8

Ex. 1 (Carvajal Dep. at 111-12).) Further, Carvajal testified that the Hammetts were "always talking demeaning other cultures, talking about Mexicans," and in their frustration, they just made racial comments, you know; these fucking Mexicans." (Id. Exs. (Carvajal Dep. at 36).) Carvajal's allegations are insufficient to allege that his workplace was "permeated with discriminatory intimidation, ridicule, and insult" or that the racial comments were directed at him. Hopkins, 77 F.3d at 754. Carvajal's main complaints pertain to Ms. Hammett's vulgarity, her work demands, and negative comments regarding his ability.[3] Based on the foregoing, Carvajal has failed to raise any genuine issue of material fact that the harassment was "sufficiently severe or pervasive."

In addition, Carvajal objects to the magistrate judge's conclusion that there was no evidence to support his claim that Hayes & Lunsford did not properly investigate his complaint of harassment. (Objections 4.) Carvajal alleges that the Defendants' failure to conduct an adequate investigation allowed "the existence and perpetuation of the hostile work environment experienced by Plaintiff."[4] (Pl. Mem. Opp'n Summ. J. 10.)

> An employer is liable for harassment by the victim's coworkers only if it knew or should have known about the harassment and failed to take effective action to stop it. Knowledge of harassment can be imputed to an employer if a reasonable

---

[3] Ms. Hammett testified that Carvajal's work was poor and he often made mistakes. (Defs. Mem. Supp. Summ. J. Ex. 3 (D. Hammett Dep. at 26-27).) Further, Alverson testified that "I showed Abner Carvajal how to bend pipe a number of times while he was assigned to me as an electrician's helper. All he had to do was put in line and he couldn't get it right." (Id. Ex. 4 (Alverson Aff. ¶ 3).)

[4] The magistrate judge interpreted this argument as supporting Carvajal's retaliation claim. After review of Carvajal's memorandum in opposition to the Defendants' summary judgment motion, it appears that this argument is potentially offered in support of both of his claims.

person, intent on complying with Title VII, would have known about the harassment. Once the employer has notice, then it must respond with remedial action "reasonably calculated to end the harassment."

Sunbelt Rentals, Inc., 521 F.3d at 319 (internal quotation marks and citations omitted). Hayes & Lunsford has an anti-harassment policy in its handbook that prohibits "(a)ctions, words, jokes or comments based on an individual's . . . race (or) ethnicity." (Defs. Mem. Supp. Summ. J. Ex. 1 (Loftis Aff. Ex. 1 (Handbook ¶ 4.4)).) Pursuant to the policy, harassment must be reported to a supervisor or human resources by the victim or a witness. (Id. (Loftis Aff. Ex. 1 (Handbook ¶ 4.4)).) "The institution and enforcement of [an anti-harassment] policy, in conjunction with an adequate complaint procedure, aid the employer in establishing that it has exercised reasonable care to prevent discrimination." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 187 (4th Cir. 2001) (internal quotation marks omitted). "However, the mere promulgation of an anti-harassment policy, no matter how well-conceived, will not suffice to show the requisite level of care where the employer has administered the policy in bad faith or has rendered it ineffectual by acting unreasonably." Id. (internal quotation marks omitted).

Carvajal alleges that the magistrate judge has ignored the evidence that no one ever contacted and interviewed Ms. Hammett regarding Carvajal's complaint. (Pl. Mem. Opp'n Summ. J. Ex. 3 (D. Hammett Dep. at 37-38).) Further, Carvajal submits that Hayes & Lunsford had no procedures for dealing with complaints and "few guidelines" for conducting an investigation. (Pl. Mem. Opp'n Summ. J. 13-14.)

A review of the record fails to raise any genuine issue of material fact regarding the reasonableness of Hayes & Lunsford with respect to conducting the investigation. Loftis

prepared a three-page report outlining the findings from the investigation of Carvajal's complaint. (Defs. Mem. Supp. Summ. J. Ex. 1 (Loftis Aff. Ex. 2 (Investigation Report).) In the report, there is a summary of the July 15, 2009 interview with Carvajal. Further, the report indicates that the investigation "proceed[ed] further . . . by obtaining statements from other possible witnesses on the Broome High School job site." (Id. Ex. 1 (Loftis Aff. Ex. 2 (Investigation Report)).) Murray interviewed employees at the job site and Carvajal submitted a written statement as requested by Murray. (Id. Ex. 1 (Loftis Aff. Ex. 2 (Investigation Report)).); (Defs. Reply Exs. 7 & 8 (Murray Dep. at 21-24).) The investigation uncovered one instance where Mr. Hammett made a derogatory statement in front of two other employees, Antonio Valencia and Jason Farmer, regarding people of Mexican descent. (Defs. Mem. Supp. Summ. J. Ex. 7 (Murray Aff. ¶ 5).) Carvajal was not present when this incident occurred. (Id. Ex. 8 (Valencia Aff. ¶ 4).) Valencia testified that this incident was the only time he had ever heard Mr. Hammett speak derogatorily of his race or national origin and that he had never heard Ms. Hammett speak in a manner derogatory to his race or national origin. (Id. Ex. 8 (Valencia Aff. ¶ 4).) Murray issued a written warning to Mr. Hammett on July 20, 2009. (Id. Ex. 7 (Murray Aff. Ex. 1).)

     Loftis and Murray closed the investigation after finding that Carvajal "failed to give. . . any solid examples of where he was personally racially harassed or witnessed racial harassment." (Id. Ex. 1 (Loftis Aff. Ex. 2).) Carvajal by his own admission downplayed the extent of the harassment to Loftis and Murray. "I limited it. At that point I didn't want to create an issue. I felt I was still working there, didn't want to create a racial issue and give all the details as the way Debbie was behaving. I was actually looking after the interest of the

11

company, which I always have." (Pl. Mem. Opp'n Summ. J. Ex. 1 (Carvajal Dep. at 39).) The only conclusion that can be drawn from the evidence is that Hayes & Lunsford thoroughly investigated Carvajal's complaint. As such, the court grants Defendants' motion for summary judgment regarding the hostile work environment claim.

### C. Retaliation

Carvajal asserts that there is sufficient evidence to support his retaliation claim. "In order to establish a *prima facie* case of retaliation, [Carvajal] must prove three elements: first, that []he engaged in protected activity; second, that an adverse employment action was taken against h[im]; and third, that there was a causal link between the protected activity and the adverse employment action." Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004). "[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004).

If an employee establishes a prima facie case of retaliation, then the burden shifts to the employer "to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007). If the employer meets this burden of production, then "the burden shifts back to [Carvajal] to show that the reason is mere pretext for retaliation by proving both that the reason was false, and that discrimination was the real reason for the challenged conduct." Id. (internal quotation marks omitted).

Carvajal alleges that Hayes & Lunsford retaliated against him by transferring him to the Greenwood High School project after he made a complaint on July 14, 2009 and terminating his employment when the project ended. The magistrate judge found as follows:

> [Carvajal alleges in his memorandum in opposition to summary judgment that] he reported to Mr. Hammett that he was being harassed by Mrs. Hammett because of his race and that Mr. Hammett "specifically threatened Plaintiff with termination if he were to make any attempt at filing a report." This argument is not supported by the plaintiff's deposition testimony wherein he testified that he simply told Mr. Hammett that he could not work with Mrs. Hammett anymore. The plaintiff's deposition testimony is corroborated by Mr. Hammett's testimony. There is also no evidence that the plaintiff told Mr. Hammett that he was leaving the job site to file a complaint; he simply said that he was going to the office. According to Mr. Hammett, he told the plaintiff that if he walked off the job, he did not know if he would still have a job. There is absolutely no evidence that Mr. Hammett threatened the plaintiff with termination if he made a report as alleged by the plaintiff.

(Report & Recommendation 11-12 (internal citations omitted).) In his objections, Carvajal alleges that

> [i]n his testimony leading up to the statement made to Plaintiff that "if you walk off the job, I don't know if you'll have a place to come back [to at Broome High School]," Mark Hammett specifically raised the issue of not "knowing what the policy would be concerning if [Plaintiff] had [a] complaint," clearly raising the specter that if Plaintiff chose to leave the job site to file his complaint regarding Debbie Hammett's behavior, he may lose his job at Broome High School. While Mark Hammett may have been clever enough not to explicitly state that Plaintiff's job would be in jeopardy if he left the job site to file a complaint of racial harassment, when it is also taken into consideration that the person about whom Plaintiff was to make the complaint was Mark Hammett's wife, Debbie Hammett, one need not state expressly that "you will be fired if you leave the job site to make a complaint about my wife" to drive one's point home clearly enough.

(Objections 3-4.) Mr. Hammett did not threaten Carvajal with termination and there is no evidence that Mr. Hammett knew that Carvajal was leaving the job site on July 15, 2009 to file a complaint. (Defs. Reply Ex. 4 (M. Hammett 49-50).); (Defs. Mem. Supp. Summ. J. Ex. 2

(Carvajal Dep. 38-39).) In addition, Carvajal admits that he requested a transfer to a different job site because he did not want to work with the Hammetts. Carvajal was transferred to the Greenwood High School site. (Pl. Mem. Opp'n Summ. J. Ex. 1 (Carvajal Dep. at 59-60).); (Defs. Mem. Supp. Summ. J. Ex. 7 (Murray Aff. ¶ 7).) Carvajal was terminated when the job at Greenwood High School was completed and according to Loftis, "there was no other job to send him to." (Defs. Mem. Supp. Summ. J. Ex. 1 (Loftis Aff. ¶ 7).) Further, the uncontroverted evidence is that due to a downturn in the economy, Hayes & Lunsford was forced to lay off 42 employees. (Defs. Mem. Supp. Summ. J. Ex. 1 (Loftis Aff. ¶ 7 and Ex. 3).)

Moreover, for the reasons stated above, there is no evidence that Hayes & Lunsford's investigation was unreasonable. Carvajal testified that he limited his disclosure of the extent of the harassment because he did not want to create any issues. (Pl. Mem. Opp'n Summ. J. Ex. 1 (Carvajal Dep. at 39).) Further, Carvajal testified that "[t]he information I withheld was the verbal abuse, the direct, strong verbal abuse. I didn't want to create – you know, I wanted to keep my job, so I didn't want to – I just wanted them to know that I was being harassed and to do something about it at that time." (Id. Ex. 1 (Carvajal Dep. at 58).) To the extent Carvajal is arguing that he limited his disclosure for fear of losing his job, this argument fails. "A generalized fear of retaliation does not excuse a failure to report harassment. Instead, the law is specifically designed to encourage harassed employees to turn in their harasser because doing so inures to everyone's benefit." Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 267 (4th Cir. 2001). There is no evidence to support a finding that the Defendants' proffered reason for terminating Carvajal is pretextual. Based on the foregoing, the court finds

14

that the Defendants are entitled to summary judgment on the retaliation claim. Therefore, the court adopts the magistrate judge's Report and Recommendation.

It is therefore

**ORDERED** that the Defendants' motion for summary judgment, docket number 15, is granted. Further, the court declines to exercise supplemental jurisdiction over any state law claims.

**IT IS SO ORDERED.**

                                                s/Henry M. Herlong, Jr.
                                                Senior United States District Judge

Greenville, South Carolina
February 13, 2012